# Barrick v. James et ux.

October 25, 1949.

As Modified on Denial of Rehearing March 10, 1950.

John B. Rodes, Judge.

Terry L. Hatchett for appellant.

Rodes K. Myers for appellee.

MORRIS, COMMISSIONER—Affirming.

The action below was by James and his wife, she being a granddaughter of J. G. Spradling who died intestate early in 1946. Defendants were H. P. Spradling, individually and as administrator of the estate, and appellant. Appellees sought to recover of the estate on the ground that at the request of decedent they lived in his home; took care of and cultivated the small farm; cared for him, furnishing food and attending to all household duties.

In their petition it was alleged that in September 1936, Mr. Spradling agreed with them that if they would

come to his home, care for him and operate the farm he would execute a will giving them all his property. It is agreed by parties that no will was found.

Appellees did go to decedent's home and live there for a period of around ten years, the only question being whether there was an enforceable agreement; whether they could recover on an implied contract, or as contended by appellant (Mrs. Barrick) the services performed fell into the gratuitous category and for which there should be no recovery.

The petition contained two paragraphs, the first relying on express contract; the other seeking recovery on the ground that it was the recognized intention of decedent that he should pay, and plaintiffs be recompensed for services rendered. It may be here stated that it developed that the net value of the estate was $2900; the second paragraph asked for pay for 115 months services at the rate of $1 per day, or a total of $3460.

The defendants demurred, moved to require plaintiffs to elect, and not waiving filed a plea in abatement. None of these dilatory pleas was passed on by the court at the time, or before answer was filed. H. P. Spradling answered; without denial of the averments of the petition he alleged that a claim for services was presented to him as personal representative, and he declined to pay it solely on the ground that appellant objected to payment and he thought the claim should be adjudicated.

In a joint answer, after admitting certain historical allegations of the petition, in separate paragraphs they plead that during the period of plaintiffs' stay at the home of decedent they all lived there as one family; that the farm was cultivated on the "share the crop basis"; that Mrs. James was a granddaughter of deceased, and that the living together was for the mutual benefit of all, and her services were gratuitous, and neither was entitled to recompense.

In a third paragraph they plead that the claim was barred by the five year statute of limitations, particularly as to that part of the petition which sought recovery on an implied contract; lastly they plead recission and abandonment, because shortly before decedent's death they moved from the farm and did not furnish deceased with anything or do anything for him, "other

than such entertainment as they might have furnished at brief intervals as he was an invited guest at their home."

We note at this point that the court in giving an instruction on plaintiff's right to recover, other than on an express contract, limited the right to a period of five years prior to the death of decedent. The court overruled the plea in abatement, demurrer to the petition, and motion to elect.

A reply in general denial joined issues and after proof the matter was submitted to a jury which returned a verdict in favor of plaintiffs for $2900. Defendants filed motion and grounds for a new trial. Later Mrs. Barrick alone filed motion, setting up eighteen or more grounds, which was overruled and she alone excepted, prayed and was granted appeal.

On appeal it is contended that the judgment should be reversed because the verdict is flagrantly against the evidence; (2) appellant was entitled to a directed verdict at the close of plaintiff's and all evidence; (3) the verdict was the result of collusion between the administrator and plaintiff's counsel; (4) "standing alone on the administrator's testimony the verdict is intolerable;" (5) the court erred in overruling defendant's motion to require plaintiffs to elect; (6) the court admitted incompetent and prejudicial evidence.

We may dispose of point (3) by saying that while there appear some irregularities, there is not sufficient proof to sustain the ground. Neither were the judge, the jury, nor are we convinced that the matters upon which this ground is based influenced the jury one way or the other. Ground (4) will be treated with in the discussion of the sufficiency and competency of the evidence.

The court did not err in overruling the motion to elect. The general rule is that under statutory provisions, or independently thereof, a plaintiff may declare on both an express and implied contract and recover on either. One who pleads both in the alternative or in separate counts may introduce proof in support of either. Where plaintiff is allowed to bring his action in two counts, he cannot be compelled to elect. 17 C. J. S., Contracts, secs. 569-570, page 1205.

In 41 Am. Jr. 363, Pleading, Section 106, it is substantially stated that a general rule of pleading is to the effect that when plaintiff has two or more distinct reasons for obtaining relief sought, or where there is more or less uncertainty as to grounds of recovery or as to exigencies of proof, the petition may set out a single claim in more than one count. The pleader may state his case in as many ways as he sees fit in separate counts in order to meet any possible phase of the evidence, and he will not be required to elect. Under the general rule the common counts on an implied contract may be joined with a count on an express contract. Cited under the text there are several cases from courts of sister states upholding the rule stated.

In Kavanaugh v. Ballard et al., 56 S. W. 159, 160, 21 Ky. Law Rep. 1683, we wrote: "It is contended for appellant that the suit, as originally brought, relied on an unconditional contract to pay * * * for services in regard to Kavanaugh addition, and that the contract proved was a conditional one. The action, however, was also based upon a quantum meruit, and the issues as to the conditional contract were fully made up and presented to the court for decision * * * We see no prejudicial error in this record." See Civil Code of Practice, Section 113 (4).

The plea in abatement was based on the ground that prior to the filing of petition plaintiffs did not file a verified claim with the Administrator as required by KRS 396.010. This suit was against the administrator of the estate of J. G. Spradling, deceased, H. P. Spradling, individually, and Mrs. Edna Barrick, heirs-at-law of decedent, apparently under the provisions of KRS 396.060, formerly sections 2084 through 2086 of Kentucky Statutes. The appeal here is solely by Mrs. Barrick. It further appears that before suit was brought the administrator had refused to pay the claim which was presented on the ground that Mrs. Barrick had objected to its allowance and that he insisted that the claim ought to be litigated. In Parsons v. Gartrell's Administrator, 6 Ky. Op. 180, the following statement is made: "The object of the statute in requiring an account against the estate of a deceased person to be verified by the creditor and established by proof, and payment thereof demanded of the personal representative be-

fore suit, is to secure to such representative an accredited voucher and to save the expense of litigation."

Under these circumstances, and further considering the reasoning set out by the court in Self et al. v. York et al., 208 Ky. 594, 271 S. W. 666, we are of the opinion that the administrator is the proper person to claim the benefit of KRS 396.010. The administrator has made no such claim. Under the reasoning of Parsons v. Gartrell's Adm'r, supra, a failure of strict compliance with the statute did not prejudice Mrs. Barrick's substantial rights, as she was fully aware of the claim. Aside from what is above said, the record shows that the administrator in writing waived the statutory period for filing claim, and it is noted that the ruling of the court on the plea is not made a ground in support of Mrs. Barrick's motion for new trial.

The chief question discussed is whether or not the verdict is flagrantly against the evidence, or was the result of passion and prejudice; these grounds merge into the contention that appellant was entitled to a directed verdict.

It is not denied that Mr. and Mrs. James went to live on the farm of J. G. Spradling in September 1936 and remained until shortly before his death when decedent sold his farm, and plaintiffs bought a farm. After the sale Mr. Spradling visited friends, his son, boarded at other places, spending some time with plaintiffs and later in a hospital.

Mr. and Mrs. James were tendered as witnesses, but the court ruled that they could not testify as to any agreement or transaction they had with decedent, or what work was performed by them during their stay. About the only testimony they were permitted to give was as to the time they remained at the home, the condition of Mr. Spradling's health, and some matters which had no bearing on the case or its outcome.

The Administrator testified that he had been living with his father prior to the time plaintiffs came to the home; he (the son) became ill and unable to work and suggested that James and his wife would be willing to come to the home, and "he said if they would he would make a will and will them what he had." He said they went to the home and stayed eight or ten years. The

granddaughter waited on decedent; did the washing, housekeeping, and the grandson-in-law tended the farm and furnished the tools. After the two had been there some time decedent said they had "traded and they agreed to stay, and that he wanted them to have what was left after he died." He said "they had treated him better than me or my sister." He testified that while his father was in the hospital he said that as soon as he got out he would "do what I promised."

Grundy Marr, a neighbor, testified that during the time plaintiffs were at decedent's home Mrs. James did the cooking and washing, housekeeping and both waited on Mr. Spradling when he was ill. Mr. James furnished the stock and tools, and did the farm work; that Mr. Spradling told him more than once he was "going to fix it so Harry would get paid for what he had done"; he was around the home on an average of once every two weeks. He had heard decedent say he would get something at the store that he wanted, but as to "furnishing things, Harry did that."

W. C. Wright, a neighbor who visited decedent's home quite often, testified that Harry did the farm work and the wife the housework, washing, preparing meals and waiting on Mr. Spradling. Mr. Spradling told him several times that he was going to see that they were paid; that he was going "to make a will; that was the sure way."

Roland James, who lived nearby, was at the home nearly every day swapping work with Harry. He said Harry performed all the labor on the farm, and his wife did the housework. He had heard decedent say he wanted the two to be paid for taking care of him. Other witnesses gave substantially similar testimony, one saying that decedent said he was "figuring on willing them what little he had left after his debts were paid."

Mr. Barrick (for the defense) testified quite negatively. He had known decedent during his life, and he never told him of any deal while they lived on the farm. The only time, according to this witness that he visited Mr. Spradling was when he was at Harry's home for two or three weeks, "once or twice," and at the hospital when the daughter suggested that he "ought to see someone else about your business who knows more than I

do,'' and he replied that he did not have any business, but had a lock box at the bank. ''He did not say anything about a will.'' He testified that when Mr. Spradling was about to leave the hospital ''we asked him where he wanted to go,'' and he replied ''any place but Porter's.'' ''He wanted to get a price, as he was willing to pay as long as he had the money. My wife told him she would take him and care for him for $3.00 per day; that it would cost him that if she took care of him.''

Mrs. Barrick, testifying, said she had never heard decedent say anything about any transaction with plaintiffs, nor with ''reference to his deal with them.'' She did say that on her infrequent visits it appeared that they were ''living as one family.''

It is not forcefully argued that H. G. Spradling, who was the administrator, and testifying as if on cross-examination and against his interest, was not a competent witness. The most that is said of it is that his testimony ''was of such character that it should be disregarded.'' Since there was no effort to impeach this testimony on the trial, we can hardly disregard it on appeal.

As indicated above, the court most assuredly held the plaintiffs down in their testimony; the court excluded from and carefully admonished the jury not to consider the testimony of Harry James when he said that he had furnished tools, groceries, performed all the work and his wife did all the housework, laundry work and waiting on decedent. We find no admitted evidence on the part of these plaintiffs to be incompetent.

On the whole case we are of the opinion that the trial was conducted with extreme fairness; that the inference that the services rendered by plaintiffs was gratuitous, or that they lived with decedent for their and his mutual benefit was fully overcome by proof. Lastly we are of the opinion that the court was correct in overruling appellant's motion for a directed verdict.

Judgment affirmed.